IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MITSUI O.S.K. LINES, LTD.,

Plaintiff,

v.

QINGDAO JMS-LOGISTICS CO. LTD., and DOES 1 through 20,

Defendants.

No. C 10-05587 WHA

**ORDER COMPELLING ARBITRATION, STAYING ACTION CONDITIONALLY, AND VACATING HEARING**

## INTRODUCTION

In this dispute regarding payment for overseas shipping services, defendant moves to compel arbitration and stay the action pending arbitration. For the reasons set fort below, defendant's motion is **GRANTED IN PART**.

## STATEMENT

Plaintiff Mitsui O.S.K. Lines, Ltd., is a Japanese "ocean carrier and common carrier of goods for hire between United States ports and foreign ports." Defendant Qingdao JMS-Logistics Service Co. Ltd. is a Chinese "FMC-registered Non Vessel Operating Common Carrier." The parties conducted ongoing business: Mitsui regularly transported ocean-going cargo for Qingdao, and Qingdao paid Mitsui for this service (Amd. Compl. ¶¶ 3–4, 6–8).

The price for transporting a particular cargo container depended in part on its contents. Pursuant to the parties' agreement, Qingdao was to provide Mitsui a bill of particulars describing the contents of each shipment, and the bill of particulars was used to calculate the freight charges for the shipment (*id.* at ¶¶ 6–9). Mitsui alleges that Qingdao mis-classified cargoes on nearly a thousand shipments in order to obtain lower freight rates — and that it worked. Mitsui claims almost four million dollars in damages for breach of the parties' shipping contracts, and Mitsui also seeks an accounting to identify additional damages from shipment records that have not yet been audited (*id.* at ¶¶ 9–19; Opp. 3).

Qingdao denies Mitsui's allegations of fraud. Qingdao asserts that it "provided the actual cargo description to [Mitsui]," that Mitsui "selected the applicable freight rates," and that Qingdao "paid all charges invoiced by [Mitsui]." Further, Qingdao states that before filing this action, Mitsui "made no demand for the amount claimed" and "never communicated" with Qingdao about the claims (Br. 2). *Mitsui does not dispute that Qingdao has paid all sums Mitsui invoiced or otherwise demanded from Qingdao.*

The shipments this action concerns were governed by two service contracts: one that was in effect from May 2008 to June 2009, and another that was in effect from July 2009 to May 2010. Both contracts contain the same language regarding arbitration. Section 19(b) of the contracts provides for mandatory arbitration of disputes arising under the contracts:

> In the event of a dispute under this Contract, the parties to the dispute shall attempt to resolve it amicably by direct good faith negotiations between a senior executive of each such party. If there is no resolution by such negotiations within thirty (30) days, the dispute shall be resolved by arbitration in San Francisco, California under the Commercial Rules of the American Arbitration Association (AAA).

Subsequent sections of the contracts carve out exceptions to this mandatory arbitration provision. In particular, Section 19(d) provides in pertinent part: "As a further exception to Rule 19 (b) and 19 (c), [Mitsui] may bring an action for unpaid freight or charges due for transportation services performed for Shipper in any court of competent jurisdiction." (Wei Exh. A at 6;

2

Wei Exh. B at 6.).[1]  Qingdao seeks to compel arbitration of this dispute based on Section 19(b) of the governing service contracts. Mitsui opposes, arguing instead that this dispute falls within the Section 19(d) exception. This order follows full briefing on the motion.

## ANALYSIS

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted). In particular, the question whether a dispute falls within the arbitration clause of an agreement is for the court, rather than the arbitrator, to decide. *Id.* at 83–85. In so doing, courts must follow "the emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

Following the guidance of the Supreme Court, the Ninth Circuit "ordinarily will not except a controversy from coverage of a valid arbitration clause 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984). The Ninth Circuit also has explained that the scope of an arbitration clause must be "interpreted liberally" in light of Supreme Court precedent: "as a matter of federal law, any doubts

---

[1] The service contracts also provide additional instructions regarding how the arbitration is to be conducted and enforced:

> The arbitration shall be before a single arbitrator appointed by the parties to the dispute or, failing such agreement, upon the application of any such party to the AAA. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the parties to the dispute, there shall be no pre-hearing discovery. The costs and expenses of the arbitrations (including reasonable attorneys' fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator shall be final, binding, not subject to further review, and enforceable by any court, tribunal or other forum having jurisdiction. . . . The parties agree any such award may be enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. If a Party that has prevailed in arbitration finds it necessary to enforce the arbitrators' decision and award, such Party shall receive from the non-prevailing Party the costs and expenses of such enforcement, including reasonable attorney's fees and costs.

(Wei Exh. A at 6; Wei Exh. B at 6).

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Republic of Nicar.*, 937 F.2d at 478–79.

Here, the question of arbitrability is a matter of interpreting contract language. Having considered the relevant language, this order does *not* find that "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." On the contrary, this order finds that the mandatory arbitration provision is properly interpreted to cover this action. Arbitration must be compelled.

This action arises from performance of the parties' service contracts. The action therefore is "a dispute under this Contract" that, failing resolution by way of amicable negotiation, "shall be resolved by arbitration" pursuant to Section 19(b) of the service contracts (Wei Exh. A at 6; Wei Exh. B at 6). Mitsui does not dispute that this action is a "dispute under this Contract" covered by Section 19(b). The only question of contract interpretation to be decided by this order is whether this action is "an action for unpaid freight or charges due for transportation services performed for Shipper," which would take it out of the mandatory arbitration clause of Section 19(b) and into the Section 19(d) exception thereto (*ibid.*). Mitsui argues that the action is within the Section 19(d) exception, and Qingdao argues that it is not. This order agrees with Qingdao.

This is an action for damages allegedly caused by fraudulent breach of the service contracts. It is not an action for collection of "unpaid freight or charges due." Qingdao has paid Mitsui all of the freight and other charges that were invoiced for the shipping services performed. There are no outstanding bills. Mitsui's theory of recovery is not that freight or other charges it submitted to Qingdao remain "unpaid," but rather that Mitsui *should have* charged Qingdao more.

Regarding "freight," Mitsui's complaint highlights contract language explaining that freight is "calculated on the basis of particulars furnished by or on behalf of the Merchant" and that "incorrect" bills of particulars will be penalized with liquidated damages (Amd. Compl. ¶ 6). Because freight charges are calculated from the bills of particulars, the only "freight" that ever existed was the freight that was calculated from the allegedly incorrect bills of particulars, and

4

which was paid in full by Qingdao. There is no other "freight." Accordingly, there is no "unpaid freight." Mitsui claims that there *should have been* more freight. This claim is categorically different from an attempt to collect overdue payment of freight that already was calculated from bills of particulars and invoiced to the client.

Regarding any other "charges," the same is true. A charge does not come into being until a demand for payment is made. Mitsui does not identify any contract language suggesting that payment becomes due at an earlier time. Mitsui claims that Qingdao tricked Mitsui into charging less that the applicable rate for its shipment services, and that Mitsui *should have charged more*. This claim is categorically different from an attempt to collect overdue payment of a sum that actually *was charged* to the client. Because Qingdao paid all of its bills, there are no "unpaid freight or charges due" at issue in this action. Instead, the central issue is whether the bills should have been higher. The action does not fall within the Section 19(d) exception, and the Section 19(b) mandatory arbitration clause controls.

Mitsui characterizes the four-million-dollar damage award it seeks as "outstanding freight charges," but this clever wording does not change the result (Opp. 2, 5–6). Because Mitsui never charged Qingdao for this sum, it is not an "outstanding charge." Mitsui also emphasizes its allegations that Qingdao is contractually "bound to pay" Mitsui the correct amount for its shipping services, and Mitsui points to contract language stating that "Freight shall be deemed fully earned on receipt of the Goods by the Carrier" (Amd. Compl. ¶¶ 6, 13). The argument that Mitsui *earned* and is entitled to payment of sums beyond the amounts it actually billed to Qingdao does not amount to a collection claim for unpaid *charges*.

Mitsui argues that Qingdao's "assertion that it has paid the freight in this case" is "irrelevant" because it "goes to the merits of the case, not the question of arbitrability" (Opp. 7). Not so. As explained, this uncontested allegation shapes Mitsui's theory of recovery in this action into something outside the Section 19(d) exception. Mitsui characterizes "[t]he gravamen" of its own complaint as follows: "because the description of some of the cargo provided to [Mitsui] by Qingdao for transport from China to United States [*sic*] did not accurately state what the shipped commodity was, Qingdao paid lower freight rates for those shipments than it was

5

1  required to pay under [Mitsui]'s tariffs" (Opp. 3).  Essentially, Mitsui alleges, Qingdao got away
2  with paying less than it should have for Mitsui's shipping services, because Qingdao fraudulently
3  induced Mitsui to charge less than the applicable rates.  Mitsui is not attempting to collect
4  overdue payment of outstanding charges that Qingdao failed to pay.  Mitsui is attempting to
5  collect payment of charges it should have, *but did not*, levy against Qingdao.  This theory of
6  recovery is not covered by the Section 19(d) exception for actions for "unpaid freight or charges
7  due."  Pursuant to the mandatory arbitration clause in Section 19(b) of the parties' service
8  contracts, Qingdao's motion to compel arbitration is **GRANTED IN PART** as explained below.

## CONCLUSION

10  Defendant's request for judicial notice of the operative pleadings in this action is
11  **GRANTED**.  Defendant's motion to compel arbitration and stay the action pending arbitration is
12  **GRANTED IN PART** to the following extent.  The parties are **ORDERED** to immediately proceed to
13  arbitration of their dispute.  The Court shall retain jurisdiction to enforce any award.  Pending
14  arbitration, the proceedings herein are **STAYED**.  The stay, however, is conditional on the timely
15  completion of arbitration.  In the future after a reasonable period of time has gone by, plaintiff
16  may move to lift the stay upon a showing that defendant has failed to expeditiously cooperate
17  during the arbitration proceedings.  Specifically, plaintiff may file such a motion if the arbitrator
18  is not fully selected in **75 CALENDAR DAYS**, or if trial-type arbitration proceedings do not begin
19  by **FEBRUARY 1, 2012**.  This provision presupposes that plaintiff itself expeditiously and in good
20  faith attempts to prosecute the arbitration proceedings.

21  The motion hearing set for April 21, 2011, is **VACATED**.  All other current case
22  management dates and deadlines are also **VACATED**.  A case management conference is **SET** for
23  **11:00 A.M. ON OCTOBER 13, 2011**.

25  **IT IS SO ORDERED.**

27  Dated: April 11, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6